Ms. Beecroft's case is an example of why there needs to be fairness for restitution and forfeiture in fraud cases, particularly with how those amounts are proven and later imposed. And really, it's beyond fairness. It's about what evidence went into those amounts, and under the Eighth Amendment, that's the amounts being in an excessive fine. And first, as to restitution in around $2.2 million, that amount was imposed without sufficient evidence from the victims as to actual loss. First, the burden on demonstrating the amount is on the government, and then the district court has an independent obligation to ensure the sentence is supported by independent, reliable evidence. And we're just left with many questions about what that one-page restitution list means. The government essentially approached with the list. There was no discussion or prove-up. And what went into this list? Were the amounts proven at trial? What properties went into this list? We just don't know. So it's an unfair case. Counsel, what do we do with the Newman case? Newman as to forfeiture issues, Your Honor? What's your view on the Newman case? Newman as to forfeiture. It is, in general, expansive, feeling as to forfeiture amounts, especially with fraud cases. It takes the entire amount of the loan proceeds and equals a forfeiture. Two years later in Davis, there was a concurring opinion that talked about maybe there's a check and balance to Newman, that we ought to be the commission's were actually received. If someone truly only receives commissions versus the proceeds, that there ought to be a limiting of Newman in that sense. Well, I guess my real question is, and I will hear from the government on this, are the Ninth Circuit case's intention is Newman controlling in light of Davis? And in light of Northwest Thurman Street in Santa Barbara Drive? Your Honor, I would certainly argue that it's not controlling that, because, and Ms. Beecroft was sentenced, as you recall, in 2012, and did not have the benefit of the Davis decision at the time. So this is essentially a new world in that sense. How do you reconcile 22 Santa Barbara Drive versus the, I want to say this right, Baja Cajun case? How do you reconcile those two? Well, Santa Barbara Drive, it talks about, it argues that the Eighth Amendment shouldn't apply to forfeiture proceedings, if that's what Your Honor is speaking toward. Is it the forfeiture or the in rem versus in personam distinction? Well, certainly, and that's an overarching concern, Your Honor, is that forfeiture, you know, especially with this case, we're taking from an in rem setting to an in personam setting, and not only that, but a large in personam setting. So how can we translate the cases that talk about in rem proceedings in that way? And Santa Barbara really talked about the Eighth Amendment not applying to a specific subset of forfeiture under the drug proceeds. Getting back to the in rem versus in personam situation, do you see a distinction where the government actually has something in hand, you know, like $147,000 or 400,000 cases of tuna fish or whatever it might be? They actually have the rem. There's a cap on it because they have it. That's what you're talking about. Whereas in in personam, you don't necessarily have it or any portion of it. Maybe you do, maybe you don't. But is that the distinction between these cases? And if so, why? I would certainly argue yes, Your Honor, because we're taking it apart from, especially with Ms. Beecroft, something that she never possessed or really never existed in terms of what, but we're also talking about proceeds, which can be argued in a greater sense, right, that we can talk about larger steers that way. And that's the difficulty with fraud cases, as opposed to, you know, other types of cases where there is actual tangible things. So it takes us to larger spheres where we're talking about not only non-tangible things, we're talking about alternative forms of forfeiture, and then we start increasing these spheres where it creates something like this. I'm not sure if I answered Your Honor's question. I'm not sure that's helping me a lot, but I'm seeing a distinction between in rem and in personam. It doesn't sound like, from your perspective, that that's a fruitful path for us to consider. No, Your Honor, I think it is. I think it is an important distinction because of the fact that it is a — Helderman talks about that it's a sanction, right, under forfeiture, that it is punishment for the offense to talk about it in personam versus an in rem proceeding in that sense. Well, a forfeiture is a fine, right? It's a fine. It's dissimilar to a fine in a sense. So I would disagree, Your Honor. I've always had trouble with the notion that you can forfeit something that you never got in the first place. Are you making that argument? Yes, Your Honor, absolutely. What's your best support for that theory? The best support is Davis, is the concurring opinion in Davis, that it talks about how we, in certain cases, we ought to be thinking about that there is a limit to the forfeiture, especially when someone never possessed it, received commissions merely on the amount the money passed through their hands, but was never the ultimate receiver of the monies. And I just wanted to move over to restitution side, but I understand, Your Honor, that you and your partners are really concerned about forfeiture. I didn't want to. Well, I happen to be concerned about forfeiture, but some of my colleagues have other issues as well. So don't be too distracted by that. I'll just stick with forfeiture for a minute, Your Honor. We're just not sure, you know, in this particular case what evidence was reviewed. There were two binders that were, it appears, submitted in Mr. Grimm's sentencing, but no evidence that it was taken forward to Ms. Beecroft's case. And we don't know what counsel for Ms. Beecroft was able to review or the district court for that matter. The $107 million is what you're referring to, I assume. The $107 million apparently was the total impact. Is that? How would you describe what the $107 million was used to base the forfeiture? $107 million equals the total impact of the loans, all of the 227 properties. That's what, from the government's perspective, that's what that equaled. And then there was a binder related to, and I'll argue certainly that those amounts talked about the sentencing guideline calculations. So we have the offsets for the later sales equaling about $52 million. But that's truly a different analysis under the sentencing guideline for those purposes, at least as it relates to restitution amounts. Counsel, if we were to accept your argument that the Eighth Amendment applies to forfeiture, how would you suggest we would apportion culpability here? And therein lies the issue, Your Honor. There really is no standard that's been set. I would argue, and I have about two minutes remaining, but I want to answer Your Honor's question, that first we look at whether the Eighth Amendment applies, and then if so, look at the relative roles amongst the co-defendants to figure out if there can be some adjustment made. And what if we have a situation, though, where you don't have a pile of cash in hand or a pile of guns or something? In fact, we're going to portion what people have to come up with on their own? Well, certainly, Your Honor, I think it would be up to the district court to kind of take over the fact-finding function of that at that point. And I'd like to reserve the rest for you. You may do so, Counsel. We'll hear from the government. Counsel, you may proceed. May it please the Court. Peter Levitch for the United States. Your Honor, several things regarding the forfeiture and restitution orders. The procedural posture of this is that when Judge Hunt said, I have the final order of forfeiture, any objection to its execution, defendant said no. Now, to the extent that argument is not waived, i.e., an intentional relinquishment of a known right, we have at best plain error review. And there's no error here, much less plain error. Had the defendant, who received a spreadsheet, I put that in footnote in the answering brief, that walked anyone who read it through the binders of supporting documents there was plenty of evidence to support the propriety of the $52 million in restitution and the $107 million in forfeiture. The spreadsheet specifically walked any reader through each property, each of the 227 properties, purchase price, the inflated, fraudulently inflated purchase price, the paltry sum recouped at the forfeiture sale, the resulting loss. And all of the end, defendant had all of that and said no objection. Counsel, putting that aside for a moment, in this case, it seems to me that reading the forfeiture order doesn't seem to impose joint and several liability like the restitution order appears to. Does the government concede that the forfeiture in this case would be owed jointly and severally? Yes, Your Honor. Okay. And if that's the case, and the predicate crime in this case has certain proceeds, if the government were to recover the total amount of proceeds separately from each of the co-conspirators, it would be a massive recovery in excess of what actually was lost, would it not? Yes, Your Honor. That's why. That's a double recovery, is it not? Above $107 million would be a double. Yeah. I mean, likelihood is a different issue, but theoretically, that would be a double recovery. That's correct. Does the government then concede that for purposes of certainly this matter, that anything that would be recovered from another defendant would in effect be deducted from the total amount? I know that's different than joint and several. I'm just trying to work with you on the double recovery issue. Yes, Your Honor. Perhaps I can shortcut this by saying when we get to $107 million in forfeiture, we stop. If Beecroft supplies it, if Mazzarella supplies it, if Grimm supplies it, whatever the source, when we get to $107 million, we stop. Likelihood, as Your Honor quite rightly points out, is another story. Counsel, the district court went to great pains in opposing the sentence to distinguish the relative levels of culpability of Beecroft from Grimm and Mazzarella in lowering the sentence imposed on Beecroft. Why shouldn't the district court go through a similar analysis with respect to forfeiture? Well, I would say, first of all, Your Honor, the forfeiture is mandatory. And under the MVRA, we start with that. The second step is the government — But $107 million isn't mandatory. Where does it say that? Well, as to forfeiture, $107 million, Newman wrote the district court has no discretion to reduce or eliminate mandatory criminal forfeiture. In the MVRA for restitution, I put in the answering brief this Court's opinion to the effect of the district court shall require this to be paid. Now, Your Honor is correct. There is discretion to apportion sentencing restitution awards between co-conspirators in the restitution context, but the district court here didn't abuse its discretion in not apportioning the vastly reduced amount. We proved $52 million in loss as set forth by the spreadsheet that was provided to counsel and the supporting documents. And then the government, the prosecutor, said we're only going to keep the three on the hook for the fraudulent transactions that were proven at trial. We didn't prove all 227 bad deals at trial, just a representative smattering. And based on those, from $52 million proven in loss, they were down to 2.2 million. The district court acted well within its discretion in deciding not to apportion that any further between Beecroft, Maserell, and Grimm, particularly having sentenced Grimm the 25 years, Maserell at the 14 years, and Beecroft to a mere 36 months, when the low end of her otherwise applicable guideline range was 210 months. Scalia, How much of the $107 million passed through the hands of Ms. Beecroft? I don't know if that precisely is known or if it's ever known, Your Honor. Record evidence adduced at trial did, however, show that she was at the hub of the conspiracy, that she personally was Steve Grimm's right-hand man, Skip Young. That's kind of an oxymoron, isn't it, that she was his right-hand man? Point taken. Skip Young, who did cooperate for the government, said he was told to go through Grimm and Beecroft because, quote, they were in control. Young received fraudulent information to put in a loan application from Beecroft. Beecroft, quote, basically oversaw all the transactions. But basically what you're telling us is because this is a conspiracy that she gets thrown in with the whole thing, and I think the law pretty much suggests that, but I think at least what I'm wrestling with is you've got a huge sum of money here. It's money lent by banks. It's collateralized by purchased money first trustees for the most part. The collateral perhaps doesn't cover everything, but it covers a lot. And I'm wrestling with the fact that this forfeiture is 100 times larger than the maximum of the excessive fines clause suggests in some of our case law. Why isn't this an excessive fine? Well, there's a few reasons. First, setting to one side, none of this was raised before Judge Hunt. I understand. But it's a question of law, which we can address. Yes, Your Honor. And Bajicagian directs that there were certain factors that were present in Bajicagian that are certainly not present here. In Bajicagian, the $300,000 that the guy had in his pocket, that was lawful proceeds. There was nothing dirty or guilty about that res. His — the crime was failing to report it to the customs officials. Here, by contrast, the $107 million, which was plainly foreseeable in a multimillion-dollar years-long fraud that Beecroft never left and never withdrew from, this is not — this is dirty money. Let's assume for a moment, hypothetically, that the bank lent $107 million and that by the time of the sentencing that all of that money had been recovered. Would it be lawful to have a forfeiture? And if so, in what amount? I don't know the answer to Your Honor's question at this point. I would, however, point out that in the facts of this case, virtually none of it. Now, I understand. I'm wrestling with the intellectual aspect of it. How do we deal with this seeming — I don't know. I don't think it's an anomaly, unfortunately. But there's just something fundamentally unfair about the whole thing, that somebody has to pay a staggering sum of money that they didn't actually have in their hands and even hypothetically, if it had all been returned, that person might still be liable. And that's where I get in some trouble with the excessive fines problem. Well, I would respectfully disagree with Your Honor's characterization and any attempt to write in a requirement that it, quote, be in someone's hands. The very nature of complicated white-collar fraud shows that unlike the drug case where the guy is holding the 30 pounds of methamphetamine, the proceeds of the fraud, as defined by Newman and Tedesco, need not be in the person's hands. Right. But you've got two factors here. You've got restitution and you've got forfeiture. Yes. Both, in this case, staggering sums. So let's leave the restitution alone. You've got full, anything got touched there, it's covered. But forfeiture is a different issue, isn't it? Yes, it is, Your Honor. It's a different statutory creature. I'm about to run out of time. It's a different statutory creature and it serves a different purpose. I would respectfully suggest, however, that in the wake of Newman, and I keep saying Newman, it was Newman and Tedesco, and the Tedesco part of the Newman opinion is what bears squarely upon Beecroft's case. Now, is Newman correctly decided? Yes, it was, Your Honor. And how do you balance Newman with Santa Barbara Drive and Northwest Thurman? Well, Santa Barbara Drive, authored by Judge Reimer, and the dissent in Thurman Street, authored by Judge Reimer, gets to the point that I was trying to make earlier in talking about Jacagian. If we're trying to – if the – this is 107 million. We could describe it as staggering, unfair. These is proceeds of Beecroft's fraud. This is not, as in – Very little of which actually passed through her hands. That's what bothers me. I don't see how you can forfeit something that you never had in the first place. I can understand restitution. That's a separate responsibility. Judge Berzon raised in the Davis concurrence but said this is for another day. But in Davis, in that concurrence, the fellow was merely taking a commission on money he was laundering for somebody else. Beecroft, it's a finding of fact, was at the hub of a multimillion-dollar, many-year conspiracy, just like the drug conspirator who said, I didn't know – I just thought we were going to sell gram or ounce quantities. I didn't know we were going to sell pound and kilogram quantities. If it's reasonably foreseeable, you're on the hook. Thank you, counsel. Your time has expired. We'll hear from counsel in rebuttal. Thank you, Your Honor. I just wanted to touch on Thurman as far as the end. Before you do that, counsel raised this question about the standard of review  Do you want to respond to that? Yes, Your Honor. And that was sort of left open in Davis as far as whether plain error review applied. Well, what about waiver? Waiver. Well, I'll tell you in this case, Your Honor, the defense counsel did raise objections to both the pre-sentence report and the sentencing memorandum as to the loss amount and Ms. Beecroft's role. So I'd argue that waiver wouldn't apply in this circumstance, Your Honor. So in other words, there's no plain error because there's an objection from your perspective? Yes, Your Honor. And the case decided by the government, you know, there's really no case that talks about plain error in the forfeiture and restitution setting. And also, even if there was no objection made on the restitution side, if we're awarding an amount greater than the victim's loss, that is plain error. Just briefly on Thurman, Your Honor, there was an analysis as to forfeiture as to whether it was excessive, and there was a comparison of the fine amount versus the forfeiture amount. And the Court in that case talks about the fact that the forfeiture was 40 times the fine, so that equaled an excessive forfeiture amount. And I believe, to clarify Your Honor's comment earlier about the fine, excessive fine, Eighth Amendment versus a criminal fine. I was confused about that earlier, Your Honor. Sorry. And just briefly, Newman, conspiracy charges, that can be, you know, rectified in this case and, you know, consistent in the sense that Newman is still limited by statutory and constitutional limits, including the Eighth Amendment. Do you believe that our case law is in tension and conflict, or the cases can be reconciled? They can, Your Honor, because we're talking about the Constitution and the limits of Newman in that sense. They can be reconciled, you say? Yes, Your Honor. In your favor? Yes, Your Honor. Very well. Anything further? No, Your Honor. Thank you. Thank you, counsel. The case just argued will be submitted for decision. And we will hear argument next in United States versus Cisneros.
judges: O'scannlain, M. Smith, Morris